## HOTCHNER v. FEDERAL ELECTRIC CO.
### SAME v. MORGAN et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1923.)

#### No. 3860.

1. Patents ⬥328—1,259,237, for illuminated sign, not infringed.
   The Hotchner patent, No. 1,259,237, for an illuminated sign, *held* not infringed.

2. Patents ⬥328—1,315,187, for illuminated sign, not infringed.
   The Hotchner patent, No. 1,315,187, for an illuminated sign, *held* not infringed.

Appeals from the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit in equity by Joseph Hotchner against the Federal Electric Company, and same against R. E. Morgan and P. C. Long. Decrees for defendants, and complainant appeals. Affirmed.

Carlos P. Griffin, of San Francisco, Cal., for appellant.

Chas. E. Townsend and William A. Loftus, both of San Francisco, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. These cases, consolidated for trial, involve patents for illuminated signs. The complaints were dismissed and decrees made in favor of the defendants.

### Hotchner v. Federal Electric Company.

[1] Patent No. 1,259,237, dated March 12, 1918. The object stated is to provide a sign which gives the appearance of an ornamental sign by day, as well as a good effect at night when illuminated. In the specifications the invention was described substantially as follows: The front or body of the sign, as indicated, consists of sheet metal pressed outwardly, to produce a molding having an outwardly pressed surface, which molding would have the shape of the desired letter. This molding is pressed outward far enough so that a suitable sheet of translucent material may be inserted under the molding and is held in place in the plane of the sheet metal front by strips of sheet metal soldered or otherwise secured to the inside of the front. The strips of metal are secured to the inside of the front and may be pressed against the translucent material to hold it in place against the inside of the molding when the sign is put together. The sheet of translucent material is not cut out the shape of the letter, but covers the entire area defined by the length and breadth of the letter or character. By thus making the sheet of translucent material cover the entire outer area of the character without conforming to the outline of the letter, the cost of manufacture is reduced, while the structure is actually stronger.

Hotchner charged infringement of claim 4, which reads as follows:

"A sign comprising a sheet metal body with a raised molding formed therein to define a character; a sheet of translucent material covering the entire area of the space bounded by the greatest length and breadth of the letter back of the same, the edges of the molding toward the center of the elements of the letter lying substantially in contact with the translucent material, means to illuminate the translucent material, and through which the light shines."

Separating the elements of the claim, we have: (a) A sheet metal body with a raised molding formed therein to define a letter or character; (b) a sheet of translucent material covering the entire area of the space bounded by the greatest length and breadth of the letter back of the same; (c) the edges of the molding toward the center of the elements of the letter lying substantially in contact with the translucent material; (d) means to illuminate the translucent material through which the light shines. Now, keeping in mind that the edges of the molding must be substantially in contact with the sheet of glass, it is plain that the defendant's sign does not have a raised molding, the edge of which substantially contacts with the glass or translucent material, for it has the molding turned outward so that the edge lies, not against the glass, but against the sheet metal body. This is very material, because in Hotchner's patent the molding forms a support or rest for the glass, whereas in the appellee's sign the molding is for ornamental effect and the glass is only in contact with the sheet metal body or frame of the letter. In view of the state of the art when Hotchner produced, as disclosed by the patents to Little (1861), the French patent to Boldes (1903), and the evidence of the prismatic signs used in Denver, Colo., about October, 1912, and in Los Angeles, Cal., in 1904, and at Portland, Or., in 1911, the patent is necessarily circumscribed and its claims must be narrowly construed (Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053), and the result must be that infringement has not been proved and the District Court properly dismissed the case.

## Hotchner v. Morgan and Long.

[2] Patent No. 1,315,187, issued September 2, 1919, is here involved. The inventor described his sign as of the illuminated type known as a transparency, the object being "to provide means whereby the sidewalk and store front may be adequately illuminated without, at the same time, destroying the effect of the sign." He proceeded upon the understanding that transparencies are not translucently illuminated as signs having outside lights, and that outside lights, if used, would kill the effect of the transparency, and that in order effectually to illuminate the sidewalk it is necessary to conceal the sidewalk lights from the person looking at the sign from a distance. Another object, as stated by the inventor, is to make "double use of the reflector used in the signs described, one side reflecting the light through the letters, while the other side reflects the lights to the street from the other lamps." The claims charged to have been infringed are as follows:

"(1) In an illuminated sign, a sign body, a lamp located within said body to illuminate a character carried thereby, a lamp below the first lamp to illumi-

nate the sidewalk below the sign, and means intercepting the rays from the latter light when the sign is observed at some distance horizontally therefrom. (2) In an illuminated sign, a sign body, a translucent character carried thereby, a concealed light to illuminate said translucent character, a reflector below the lamp to direct the light from said lamp through the character and another light upon the opposite side of said reflector from said first lamp for illuminating the sidewalk below the sign. (3) In an illuminated sign, a sign body, a translucent character carried thereby, a lamp within the sign body to illuminate the character, a reflector to direct the light from said lamp through the character and another light adjacent said reflector so placed that the rays therefrom will strike the opposite side of the reflector and illuminate the sidewalk below the sign."

Claim 1 has these elements: A sign body; a lamp located within the body to illuminate a character carried thereby; a lamp below the first lamp to illuminate the sidewalk below and means of intercepting the rays from the last-mentioned light when the sign is seen at some distance therefrom. But surely it is an old type of sign where there is an upper row of lamps to illuminate the sign character and a lower row to illuminate the sidewalk, and means of intercepting the rays from the lower lights when the sign is seen by one walking or approaching the sign. As pointed out by witnesses, almost any form of trough, or reflector, will intercept rays of light as specified in the claim, and would be necessarily used where it was desired to reflect light downwardly to the sidewalk rather than to have it scattered in a horizontal direction. Claims 2 and 3 both call for the use of a reflector for the lamps in the lower row, the purpose being to reflect the light from the bottom row of lamps down toward the sidewalk and to reflect the light from the upper row of lights out through the sign characters. Assuming for the consideration of the case that the combination is patentable, we cannot find that the defendants' sign infringes, for in it the bottom reflector does not in any way reflect light through the characters in the main body of the sign. The features of the appellees' sign, to which appellant addresses part of his argument in contending that there has been infringement, are a lighted electric sign having means for illuminating the sidewalk and front of the store without destroying the effect of the sign. Defendants-appellees accomplish this, however, by provision for additional lamps arranged in the bottom of the sign, fitted with a kind of trough-shaped reflector, so that the light shines downwardly, rather than horizontally or upwardly. But examination demonstrates that the light for illumination of the interior of the sign is not affected by the presence of the bottom lamps; nor is the light for illuminating the inside of the sign changed.

Trough-shaped reflectors are very old. Scarcely a theater stage is without them, and it may well be doubted whether, considering that the elements of which the combination described in Hotchner's patent are composed, are old and well known, the combination of them as described would be a patentable invention. Stephenson v. Brooklyn, etc. Ry., 114 U. S. 149, 5 Sup. Ct. 777, 29 L. Ed. 58. But, as indicated in the preceding case, upon the assumption that the patent is valid, we are satisfied there is no infringement, for in appellees' sign the bottom reflector in no way reflects light through the characters in the main body of the sign. As explained by the witnesses, sufficient light has

been provided for behind the characters, and the lower reflector is so far down in the body of the sign that there is practically no chance for the light to be reflected backward to illuminate the lower portion of the character on the side. There is some testimony which disagrees with that just referred to, but the force of such evidence is weakened by the admission of several of the principal witnesses that they did not measure the distance between the bottom line and the lowermost reflector which illuminates a sidewalk from the interior of the appellees' sign.

The matter may be summed up by saying that in appellees' sign the distance upward from the lower line of the lower line of letters above the edge of the sign being higher than the vertical height of the reflector upwards into the sign, there would be no way that that light could be reflected backward up into the sign from a reflector.

The decrees are affirmed solely upon the ground that the District Court correctly held that there was no infringement.

Affirmed.